1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   JASON MYRICK,

11                    Plaintiff,

12          v.                                                    C11-1837Z

13   U.S. SAWS, INC., a Foreign                                   ORDER
     Corporation,

14                    Defendant.

15

16          THIS MATTER comes before the Court on Defendant's Motion to Exclude

17   Plaintiff's Expert, docket no. 74, and Defendant's Motion for Summary Judgment, docket

18   no. 77.  Having considered the motions and all pleadings filed in support of and

19   opposition to the motions,[1] the Court enters the following Order.

20   _____

21   [1] The Court DENIES Defendant's motions to strike Plaintiff's response and to strike paragraphs 16-20 of
     the Declaration of Harold Pendell.  Defendant's Reply in Support of Motion to Exclude, docket no. 84, at
22   1; Defendant's Reply in Support of Motion for Summary Judgment, docket no. 88, at 1.

23

ORDER - 1

**Background**

**A. Plaintiff's Accident**

On November 3, 2008, Plaintiff Jason Myrick was cutting an exposed ductile iron pipe using a hand-held cut-off machine fitted with a blade manufactured by Defendant U.S. Saws, Inc.  Second Amended Complaint at ¶ 3.1; Answer to Second Amended Complaint at ¶ 3.1.  Plaintiff was required to first excavate and then cut the pipe.   Myrick Deposition, Donohue Decl. Ex. E, docket no. 79-2, at 131:15-132:8.

As Plaintiff was cutting the pipe, an accident occurred but Plaintiff does not know exactly what happened.  Id. at 196:4-6.  Plaintiff "felt like somebody hit [him] in the face with a baseball bat," but he did not know what struck him.  Id. at 196:6-7, 197:18-20.  Plaintiff suffered facial injuries as a result of the accident, including fractured, dislocated and avulsed teeth, facial lacerations and contusions.  Ronald C. Dobson Letter dated November 13, 2012, Donohue Decl. Ex. A.

**B. Plaintiff's Expert**

Plaintiff hired Harold Pendell, P.E., as an expert witness regarding the safety of the design and manufacture of the product that caused Plaintiff's injury.  Pendell Decl., docket no. 82, at ¶ 5.  Pendell has a degree in Mechanical Engineering from the University of Washington and is a licensed Washington State Professional Engineer.  Id. at ¶ 2.  He has worked as a mechanical engineer for 29 years, providing engineering design, forensic and consulting services.  Id.  Pendell examined the saw blade at issue in this case, reviewed product literature, ANSI standards and related warnings.  Id. at ¶ 7.

He also considered deposition testimony of Plaintiff, Mark Carter, and Jason Slaney, the discovery responses between the parties, and the written report by Dr. James Miller.  Id.

Pendell completed a one-page report of his findings and conclusion.  Pendell Report dated November 17, 2012 (the "Report"), Pendell Decl. Ex. B.  In the Report Pendell excludes other causes of failure, including overheating, operation without an arbor reducer, incorrect installation, improper torque of the spindle bolt, or operation in an over-speed condition.  Id.  Pendell concluded that the failure of the blade "most probably was the result of a defective weld," resulting in a portion of one of the diamond segments separating from the steel center core causing serious injuries.  Id.

In his Declaration, Pendell concluded that the blade failed due to a defective weld and that therefore the blade was not reasonably safe as manufactured.  Pendell Decl. at ¶ 10. He opined that the injury can be explained by the objectively documented failure of the saw blade weld and an understanding of basic physics.  Id.  He concluded that the bond between the metal blade components was defective.  Id. at ¶ 11.  Through his examination of the blade he determined that only one portion of the weld was holding the segment to the steel core and that weld failed.  Id. at ¶ 12.  Pendell also concluded that the blade surface revealed corrosion, which is another indicator that the weld was incomplete.  Id. at ¶ 15.

Pendell determined that if the weld had failed due to a "pinch of the blade," one possibility raised by the Defendant, the surface would exhibit a silver sheen over the area where the weld was pulled apart.  Id. at ¶ 17.  Finally, Pendell concluded "that the force

1  required to break the blade segments and reduce the speed of the blade would also be

2  transferred to the saw operator, resulting in a saw kickback." [2]  Id. at ¶ 19.

3      Defendant takes issue with Pendell's qualification as an expert as well as the methods

4  Pendell used in forming his opinions.  Defendant also asserts that Pendell's theory of

5  causation, attributing the accident to kickback caused by the blade breaking, is untimely

6  because the theory was not contained in his expert report but was instead raised during

7  his deposition in December, 2012, after the deadline for submitting expert reports.

8      Regarding his qualification as an expert in this matter, Defendant asserts that Pendell

9  is not qualified because Pendell has no formal training in metallurgy and has a lack of

10  knowledge on the subject.  Defendant supports this contention with Pendell's deposition

11  testimony, in which Pendell admitted, among other things, that he did not know how the

12  cutting segments were attached to the blade, did not know what the segment, blade, and

13  weld material was made of, did not know the melting points, did not know the blade

14  tolerances, and did not know what standards govern welds.  Pendell Deposition, Donohue

15  Decl. Ex. B, docket no. 76-1, at 26:18-20, 13:21-24, 11:14-17, 21:14-16, 25:16-25,

16  21:17-23:1, 49:2-5.

17  _____

18  [2] Although Pendell stated in his Declaration that the segment breaking off resulted in saw kickback, he
did not mention kickback as a cause of injury in his Report.  See Report.  In his deposition, Pendell was

19  asked if he could say, to a degree of reasonable engineering certainty, that the failure of the blade caused
it to rise up and the saw kicked back and hit Plaintiff in the face.  Pendell Deposition, Donohue Decl.

20  Ex. B, docket no. 76-1, at 45:9-14.  Pendell stated he didn't "know about that.  Because [he's] not sure
what hit [Plaintiff] in the face."  Id. at 45:15-16.  The Declaration carefully avoids contradicting Pendell's
deposition testimony by opining only that the saw kicked back and that the defective blade caused injury

21  to Plaintiff without stating specifically that either the saw or the blade fragments hit Plaintiff in the face.
See Pendell Decl. at ¶¶ 19-20.  In addition, Pendell admitted in his deposition that he conducted no testing

22  on reactive forces in this case, Pendell Deposition at 30:3-6, and based his theory of kickback on general
knowledge of the operation of the particular saw, which he admitted he never operated.  Id. at 62:21-63:5.

23

ORDER - 4

Defendant also contends that Pendell's testimony should be excluded because his opinions lack foundation.  Pendell admitted that he did a visual inspection of the blade but did not perform any destructive or non-destructive testing of the blade or the weld.  Id. at 16:3-5, 11:9-11.  Pendell used a microscope to look at the blade but could not state what magnification he used to examine the blade.  Id. at 15:5-17.  Also, Pendell inspected only the weld he believed failed and did not inspect any of the other welds on the blade.  Id. at 22:23-25.  Pendell admitted that there are tests that could have been done on the blade, such as cutting a segment of the blade out and running an electron discharge microscope, which would allow him to determine the type of material of the blade and the type of welding material used.  Id. at 16:1-17:16.  Pendell also admitted that there are standards to nondestructively inspect a weld, including "ultrasonic" or "penetrant inspect," and that he did not use either of those methods to inspect the weld.  Id. at 49:9-17.  Pendell stated that destructive tests could be used to test a weld to find out "if the material will actually hold together to the strength required," but he did not perform any tests of the welds on the blade.  Id. at 49:18-50:2.

**Discussion**

**A. Motion to Exclude Plaintiff's Expert**

    **1. Standard**

Under Rule 702 of the Federal Rules of Evidence, an expert witness, "qualified . . . by knowledge, skill, experience, training, or education," may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on

1   sufficient facts or data; (c) the testimony is the product of reliable principles and

2   methods; and (d) the expert has reliably applied the principles and methods to the facts of

3   the case." FRE 702. The Court has broad discretion concerning the admissibility or

4   exclusion of expert testimony. Wood v. Stihl, Inc., 705 F.2d 1101, 1104 (9th Cir. 1983).

5       A trial judge has the "task of ensuring that an expert's testimony both rests on a

6   reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharms.,

7   509 U.S. 579, 597 (U.S. 1993). Under Rule 702, expert testimony "does not include

8   unsubstantiated speculation and subjective beliefs." Diviero v. Uniroyal Goodrich Tire

9   Co., 114 F.3d 851, 853 (9th Cir. 1997). In addition, "the expert's bald assurance of

10  validity is not enough. Rather, the party presenting the expert must show that the

11  expert's findings are based on sound science, and this will require some objective,

12  independent validation of the expert's methodology." Daubert v. Merrell Dow Pharms.

13  (Daubert II), 43 F.3d 1311, 1316 (9th Cir. 1995).

14      In determining reliability of expert testimony, the Court may consider a number of

15  factors, "including: (1) whether the theory can be and has been tested; (2) whether it has

16  been subjected to peer review; (3) the known or potential rate of error; and (4) whether

17  the theory or methodology employed is generally accepted in the relevant scientific

18  community." Henricksen v. Conoco Phillips Co., 605 F. Supp. 2d 1142, 1153 (E.D.

19  Wash. 2009) (citing Daubert, 509 U.S. at 593-594). When an opinion is based upon

20  experience, rather than scientific experiments, the Daubert factors may not be particularly

21  relevant for determining reliability. Neal-Lomax v. Las Vegas Metro. Police Dep't, 574

22  F. Supp. 2d 1193, 1204 (D. Nev. 2008). However, the opinion must still be supported by

23

ORDER - 6

1   some objective basis.  Id.  The burden of proof is on the proponent of the expert witness –

2   the Plaintiff in this case – to prove the admissibility of the expert testimony by a

3   preponderance of the evidence.  Henricksen, 605 F. Supp. 2d at 1154.

4               **2.  Qualification of Plaintiff's Expert**

5        The Defendant contends that Plaintiff's expert Pendell should be excluded because he

6   is not qualified to provide metallurgical opinions.  Plaintiff counters that Pendell's

7   education, training and experience in the field of mechanical engineering qualifies him as

8   an expert to testify on whether the saw blade was reasonably safe as manufactured.

9   Plaintiff provides no specific facts or data regarding Pendell's education, training or

10  experience in the area of weld failure and argues, without presenting evidence, that he has

11  offered opinions of weld failure in the past.  Pendell's CV indicates he has a bachelor's

12  degree in mechanical engineering and a long employment history in that field, but does

13  not provide any specific details about his education, training and experience.  Pendell

14  Decl. Ex. A.

15       Plaintiff cites to four state court cases in support of the proposition that "specialized

16  expertise regarding every detail of a subject product is not the criteria for providing

17  expert opinion."  Plaintiff's Response to Motion to Exclude, docket no. 81, at 6.

18  However, in all four cases, the plaintiffs provided evidence of specific education, training

19  or experience that would support a finding that the expert was qualified.  For example, in

20  MCI Sales and Services, Inc. v. Hinton, the expert was qualified based not only on his

21  general experience as a mechanical engineer, but also his specific study and experience

22  which included work for MCI's former owner as a structural analyst and work for MCI

23

1   doing structural analysis on buses.  See MCI Sales and Services, Inc. v. Hinton, 272

2   S.W.3d 17, 30-31 (Tex. App. 2008).  The plaintiffs in the other three cases cited by

3   Plaintiff provided similarly sufficient evidence of the expert witness's experience or

4   training that would qualify him or her as an expert witness.[3]

5       A mechanical engineer may certainly be qualified to testify as an expert witness on

6   welds, or on many other matters, if a plaintiff submits sufficient evidence of the expert's

7   qualifications.[4]  Plaintiff is not required to prove that Pendell has specialized expertise on

8   the particular saw or blade at issue, or required to prove that Pendell has formal training

9   in metallurgy or material science, as Defendant would require.  However, the burden

10  remains on Plaintiff to prove by a preponderance of the evidence that Pendell is qualified

11  to offer testimony as an expert witness by knowledge, skill, experience, training, or

12  education.

13      Plaintiff offers no evidence regarding specific training, experience, or specialized

14  knowledge Pendell has that would be relevant to his examination in this case.  Stating

15  only that Pendell is a mechanical engineer with years of experience in that field is not

16  _____

17  [3] See Fueger v. Case Corp., 886 N.E.2d 102, 106-107 (Ind. Ct. App. 2008); 985 Assocs., Ltd. v. Daewoo
18  Elecs. Am., Inc., 945 A.2d 381, 385-386 (Vt. 2008); Burley v. Kytec Innovative Sports Equip., Inc., 737
    N.W.2d 397, 405 (S.D. 2007).

19  [4] See, e.g., Soo L. R. Co. v. Fruehauf Corp., 547 F.2d 1365, 1374-1376 (8th Cir. 1977) (mechanical
    engineer qualified to testify to welding practices on rail cars due to extensive employment in rail car
20  repair and design and experience in developing welding techniques); see also, Wood v. Stihl, Inc., 705
    F.2d 1101, 1104 (9th Cir. 1983) (mechanical engineer qualified to testify about chain saws due to
    background in mechanical engineering, experience working with chain saws, familiarity with aspects of
21  design, supervision of design engineers, experience testing and evaluating chain saws); Dearmond v. Wal-
    Mart La. LLC, 335 Fed. Appx. 442, 445 (5th Cir. 2009) (mechanical engineer qualified to testify about
22  lawnmower due to master's degree, experience teaching mechanical engineering, experience as a design
    consultant and specific experience on the type of system at issue in the case).

23

ORDER - 8

1  sufficient to qualify Pendell as an expert witness without providing more information as

2  to why Pendell is qualified to testify in this case.  Pendell has a degree in mechanical

3  engineering and may well be qualified, but Plaintiff has failed to provide the Court with

4  any basis that the witness has any special knowledge, training or experience regarding

5  welds.

6      The Court holds that Plaintiff has failed to meet the burden of proving that Pendell is

7  qualified to testify as an expert in this case and grants Defendant's motion to exclude

8  Plaintiff's expert.

9      ### 3.  Reliability of Expert's Opinions

10     In addition to challenging Pendell's qualifications, Defendant also challenges the

11  reliability of Pendell's testimony.  Specifically, Defendant contends that Pendell lacks

12  sufficient facts and data upon which to base his opinions and he lacks foundation, relies

13  on speculation, and did not apply any accepted methodology to support his theory of

14  causation.  Plaintiff offers no argument or evidence regarding the reliability of Pendell's

15  testimony.  Plaintiff argues only that Pendell is "qualified to provide an opinion regarding

16  the failure of the subject saw blade, and to confirm as a qualified engineer that the

17  product is not reasonably safe as manufactured."  Plaintiff's Response to Motion to

18  Exclude, docket no. 81, at 8.

19     Pendell's opinions alone will not support a finding of reliability without some

20  objective evidence presented.  Pendell was aware of multiple destructive and non-

21  destructive tests available that could have been done in this case, but Pendell conducted

22  no tests on the weld or blade at issue.  Plaintiff has provided no objective evidence which

23

1   would provide the Court a basis for concluding that Pendell's opinions are reliable.

2   Plaintiff has not met the burden of proving that the expert testimony is admissible and the

3   Court holds that exclusion of the expert witness is also appropriate on this basis.[5]

4   **B.  Motion for Summary Judgment**

5       **1.  Standard**

6       Summary judgment is appropriate when there is no genuine dispute as to material

7   facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

8   56(c).  The moving party bears the initial burden of demonstrating the absence of a

9   genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

10   fact is material if it may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc.,

11   477 U.S. 242, 248 (1986).  The moving party will be entitled to judgment if the evidence

12   is not sufficient for a jury to return a verdict in favor of the opponent.  Id. at 249.

13       If the moving party meets its initial burden, the opposing party "may not rely merely

14   on allegations or denials" in its pleadings.  Fed. R. Civ. P. 56(e).  The non-moving party

15   must "set forth specific facts showing that there is a genuine issue for trial" in order to

16   defeat the motion.  Id.; Anderson, 477 U.S. at 250.  Summary judgment is appropriate

17   "against a party who fails to make a showing sufficient to establish the existence of an

18   element essential to that party's case, and on which that party will bear the burden of

19   proof at trial."  Celotex, 477 U.S. at 322.

20

21   --------------------------------

22   [5] As Plaintiff's expert testimony has been excluded, Defendant's argument regarding the timeliness of
Pendell's causation theory is moot and need not be considered.

23

ORDER - 10

1    **2. Claim of Defect in Manufacture**

2        Plaintiff opposes summary judgment only as to his claim of manufacturing defect.[6]

3    Plaintiff's Response to Motion for Summary Judgment, docket no. 85, at 5.  The

4    Washington Product Liability Act (WPLA) subjects a product manufacturer to strict

5    liability if "harm was proximately caused by the fact that the product was not reasonably

6    safe in construction."  RCW 7.72.030(2).  "A product is not reasonably safe in

7    construction if, when the product left the control of the manufacturer, the product

8    deviated in some material way from the design specifications or performance standards of

9    the manufacturer, or deviated in some material way from otherwise identical units of the

10   same product line."  RCW 7.72.030(2)(a).

11       The Court excludes Plaintiff's expert and Plaintiff has presented no other

12   admissible evidence that would support his manufacturing defect claim.  Without

13   Pendell's testimony, Plaintiff is left with only the undisputed fact that he was injured

14   while using the saw.  Plaintiff offers no evidence supporting his assertion that the blade

15   was not reasonably safe in construction and no evidence that the blade proximately

16   caused his harm.  Plaintiff therefore has not produced sufficient evidence for a reasonable

17   jury to return a verdict in his favor.  Defendant has produced uncontroverted expert

18   testimony indicating that Plaintiff's injuries resulted from a saw kickback due to

19   _____

20   [6] Plaintiff concedes that he will not present evidence regarding his claims of failure to warn or failure in
     the design of the product.  Plaintiff's Response to Motion for Summary Judgment, docket no. 85, at 4-5.
21   Plaintiff also failed to rebut Defendant's assertion that Plaintiff's common law negligence and breach of
     warranty claims are preempted by the Washington Product Liability Act (WPLA), Defendant's Motion
     for Summary Judgment, docket no. 77, at 16, and Plaintiff presented no evidence to support these claims.
22   These claims will also be dismissed as a matter of law.

23

ORDER - 11

Plaintiff's improper use of the saw. Defendant has met its burden of showing that there are no genuine issues of material fact and the Court grants Defendant's motion for summary judgment.

**Conclusion**

Plaintiff has failed to prove by a preponderance of the evidence that his expert witness, Harold Pendell, is qualified to testify as an expert in this matter and that Pendell's testimony is reliable. Therefore the Court GRANTS Defendant's Motion to Exclude Plaintiff's Expert, docket no. 74. With the exclusion of Pendell's testimony, Plaintiff has failed to offer any admissible evidence supporting his claim of manufacturing defect and the Defendant has shown there are no genuine issues of material fact. The Court GRANTS Defendant's Motion for Summary Judgment, docket no. 77. The claims of Plaintiff Jason Myrick are DISMISSED with prejudice.

The Clerk is DIRECTED to enter judgment in favor of Defendant U.S. Saws, Inc. and against Plaintiff Jason Myrick, and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 28th day of February, 2013.

_____
THOMAS S. ZILLY
United States District Judge

ORDER - 12